[No. B093747. Second Dist., Div. Seven. Aug. 28, 1995.]

WILLIAM EVERETT KANE, JR., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DEBORAH ELLEN HECHT, Real Party in Interest.

**COUNSEL**

Sandra McMahan Irwin for Petitioners.

De Witt W. Clinton, County Counsel, and Frederick R. Bennett, Assistant County Counsel, for Respondent.

J. R. Nerone for Real Party in Interest.

**OPINION**

**JOHNSON, J.**—In this case we hold an appeal from an order made pursuant to Probate Code section 7241, subdivision (b) for the purpose of preventing injury or loss to a person or property, does not stay enforcement of the order. Thus, while such an order may be appealable (*Estate of Hammer* (1993) 19 Cal.App.4th 1621, 1626, fn. 1 [24 Cal.Rptr.2d 190]), the order must nevertheless be carried out as if no appeal were pending. (Prob. Code, § 7241, subd. (b).)[1]

In this case the trial court made a finding pursuant to section 7241, subdivision (b)[2] real party in interest would suffer irreparable loss if she did not receive vials of decedent's frozen sperm to which she was entitled under the terms of his will as well as under a settlement agreement entered into by the parties. Thus, on March 23, 1995, the trial court issued an order directing

[1] All further statutory references are to the Probate Code unless otherwise indicated.

[2] Section 7241 provides: "(a) Except as provided in subdivisions (b) and (c), an appeal under Section 7240 stays the operation and effect of the order.

"(b) Notwithstanding that an appeal is taken from the order, for the purpose of preventing injury or loss to a person or property, the trial court may direct the exercise of the powers of the personal representative, . . . as though no appeal were pending. Acts of the personal representative . . . pursuant to the directions of the court made under this subdivision are valid, regardless of the result of the appeal.

"(c) An appeal under Section 7240 does not stay the operation and effect of the order if the court requires an undertaking, as provided in Section 917.9 of the Code of Civil Procedure, and the undertaking is not given."

the administrator of the estate to distribute the vials to real party in interest forthwith. We conclude petitioners' subsequent appeal of that ruling did not stay enforcement of the order. Therefore we further conclude it was unnecessary for the trial court to require petitioners to post an undertaking as a condition of staying the March 23, 1995, order. Accordingly, we deny the petition for writ of mandate seeking relief from the requirement of an undertaking. However, in doing so, we not only direct the trial court to vacate its order requiring petitioners to post an undertaking but further direct the trial court to order the administrator of decedent's estate to comply with its earlier order to distribute the vials of frozen sperm to real party in interest forthwith.

## FACTS AND PROCEEDINGS BELOW

On October 30, 1991, William E. Kane took his life in a Las Vegas hotel. He was 48 years old at the time of his death. For several years prior to his death Kane lived with real party in interest, Deborah E. Hecht. Hecht was in her mid-30's when Kane died. Kane was survived by petitioners, William E. Kane, Jr. and Katherine E. Kane, the children of his former wife whom he divorced in 1976.

In October 1991 Kane deposited 15 vials of his sperm in an account at California Cryobank, Inc., a Los Angeles sperm bank. He authorized release of the vials to Hecht or to her physician. Kane also executed a will prior to his death. His will named Hecht as executor and bequeathed a substantial portion of his estate to her.

After Kane's death his will was admitted to probate. On November 18, 1991, Robert L. Greene was appointed special administrator of Kane's estate. On December 3, 1991, petitioners each filed separate will contests and commenced other litigation against Hecht. On the same date the parties entered into a settlement agreement in an attempt to reach a global resolution of the will contests and the other litigation. In the settlement the parties reached an agreement on the proper division of real and personal property of the estate. As part of the agreement Hecht relinquished her position as executor of the estate to Robert L. Green, and petitioners agreed to abandon their will contests.

The settlement agreement did not specifically address disposition of the 15 vials of Kane's frozen semen. However, the settlement agreement contained a catch-all provision which stated: "The balance of all assets over which the decedent had dominion or control or ownership, whether in the possession of Miss Hecht, the children or any third party shall be subject to

administration in the decedent's estate." The formula in the settlement agreement for distribution of assets provided ". . . [s]ums in excess of $190,000 net available for distribution will be distributed 20% to Deborah Hecht, 40% to Katherine E. Kane and 40% to Everett."

On December 9, 1992, the administrator sought an order from the trial court regarding the proper disposition of the sperm. In his petition the administrator stated petitioners requested Kane's frozen sperm either be destroyed or distributed according to the formula provided in the settlement agreement. On January 4, 1993, Judge Ross ordered all the frozen sperm destroyed. Hecht filed a petition for writ of mandate in an attempt to reverse the destruction order. We issued a peremptory writ of mandate directing the superior court to vacate its order to destroy the frozen sperm, to deny the petition for alternative relief, and to conduct further proceedings consistent with the views expressed in the opinion. (*Hecht* v. *Superior Court* (1993) 16 Cal.App.4th 836, 861 [20 Cal.Rptr.2d 275].)

Thereafter, on April 26, 1994, the probate court ruled that based on the distribution formula in the settlement agreement, Hecht was entitled to preliminary distribution of 20 percent of Kane's frozen semen. Judge Gold issued an order directing the administrator to release three vials of frozen sperm stored at California Cryobank, Inc., to Hecht. Petitioners appealed from the April 26, 1994, order directing distribution of the three vials of frozen semen to Hecht.

The administrator did not distribute the vials, as petitioners' appeal stayed enforcement of the order. (§§ 7240, subd. (k), 7241, subd. (a).) In November 1994, Hecht sought an ex parte order to show cause for contempt to force the administrator to comply with the trial court's distribution order. The trial court denied Hecht's ex parte request. On December 29, 1994, Hecht filed a petition for an order directing the administrator to distribute the vials of Kane's sperm in order to protect her from imminent injury to, or loss of, her opportunity to conceive a child if she had to wait for distribution pending resolution of the appeal or final administration of the estate. (§ 7241, subd. (b).) Attached to her petition were declarations from physicians who stated Hecht's chances of becoming pregnant had declined markedly since she turned 40 years old. The doctors opined the odds of Hecht becoming pregnant would continue to decline even further each successive year. The physicians urged the court to act swiftly to release the sperm so Hecht could begin necessary procedures for conception "before any more time passes in her biologic and physiologic system."

The trial court found that due to her age, Hecht was at imminent risk of loss if she had to wait out the appellate process before attempting to be

impregnated with Kane's sperm. The court found Hecht's situation satisfied the test of "injury or loss" within the meaning of section 7241, subdivision (b). On March 23, 1995, the trial court entered an order directing the administrator to deliver three vials of Kane's frozen semen to Hecht "forthwith."

The administrator notified Hecht he would delay distribution of the vials for 60 days in the event petitioners filed a notice of appeal. Petitioners filed a notice of appeal of the March 23, 1995, order on May 2, 1995.

In June 1995 Hecht filed a petition seeking immediate distribution of the three vials of frozen semen. In the alternative, her petition requested an order requiring petitioners to post an undertaking as a condition of staying the court's order directing immediate distribution of the semen pending their appeal.

Petitioners filed an opposition. They objected to early distribution of any part of the estate. They argued the trial court lacked authority to require an undertaking in the context of this case. In addition, petitioners argued because they had filed an appeal of the court's March 23, 1995, order directing the administrator to distribute the vials to Hecht in order to prevent injury or loss, execution of the order was stayed under the authority of this division's decision in *Estate of Hammer*, *supra*, 19 Cal.App.4th 1621, 1626, footnote 1.

At the hearing on June 20, 1995, the trial court reviewed the decision in *Estate of Hammer*, *supra*, 19 Cal.App.4th 1621. In a footnote we rejected the claim an order made pursuant to section 7241, subdivision (b) directing the executor to continue to employ legal counsel was not an appealable order. We noted all orders directing action by a personal representative of an estate are expressly made appealable by section 7240, subdivision (k).[3] Notably absent from the language in this footnote was any statement indicating an appeal would stay the operation and effect of an order made pursuant to section 7241, subdivision (b).

Nevertheless, the trial court adopted petitioners' interpretation of the language in this footnote in *Estate of Hammer*, *supra*, 19 Cal.App.4th 1621,

[3]In *Estate of Hammer*, *supra*, 19 Cal.App.4th 1621, we noted, "Weiss also filed a notice of appeal from a May 6, 1993, order, pursuant to Probate Code section 7241, directing Robert Weiss, as executor, to exercise his powers as though no appeal were pending and to continue to employ Milbank, Tweed. . . . As to the May 6, 1993, order, we reject respondent's claim that the order is not appealable. The legal effect of the order is to instruct or direct the executor, which order is appealable pursuant to Probate Code section 7240, subdivision (k)." (19 Cal.App.4th at p. 1626, fn. 1.)

and construed it to mean, if the order made pursuant to section 7241, subdivision (b) to prevent imminent injury or loss was nevertheless appealable, it meant execution of the order was automatically stayed pursuant to section 7241, subdivision (a) once petitioners appealed from the order. Based on this reasoning, the trial court believed it was without jurisdiction to order immediate action by the administrator. As an alternative, the trial court ordered petitioners to instead post an undertaking of $90,000 as a condition of staying enforcement of the order. The trial court cited the general provisions of Code of Civil Procedure section 917.2 as authority for requiring the undertaking.

Petitioners sought a writ of mandate to direct the trial court to vacate its order requiring an undertaking. They contend the trial court had no statutory authority to require an undertaking in this context and, even if it did, the amount of the undertaking required by the order was excessive.

## DISCUSSION

*An Appeal of an Order Made Pursuant to Section 7241, Subdivision (b) Does Not Stay Enforcement of the Order Pending the Appeal.*

Section 1000 explains the rules of procedure applicable in probate proceedings. This section provides: *"Except to the extent that this code provides applicable rules,* the rules of practice applicable to civil actions, including discovery proceedings, apply to, and constitute the rules of practice in, proceedings under this code." (Italics added.) Section 7241, subdivision (c) specifies when an undertaking in a probate proceeding will stay the effect and operation of an order which has been appealed. This subdivision provides: "An appeal under Section 7240 does not stay the operation and effect of the order if the court requires an undertaking, as provided in Section 917.9 of the Code of Civil Procedure, and the undertaking is not given."[4]

In this case the trial court recognized the provisions of section 917.9 of the Code of Civil Procedure were inapplicable in this context and instead relied

---

[4]Code of Civil Procedure section 917.9 provides in pertinent part:

"(a) The perfecting of an appeal shall not stay enforcement of the judgment or order in cases not provided for in Sections 917.1 to 917.8, inclusive, if the trial court, in its discretion, requires an undertaking and the undertaking is not given, in any of the following cases:

"(1) Appellant was found to possess money or other property belonging to respondent.

"(2) Appellant is required to perform an act for respondent's benefit pursuant to judgment or order under appeal.

"(3) The judgment against appellant is solely for costs awarded to the respondent by the trial court . . . ."

on the general provisions in Code of Civil Procedure section 917.2 which provides for an undertaking to stay the effect of an order directing delivery of personal property.

■ We need not decide whether the trial court erred in relying on Code of Civil Procedure, section 917.2 in requiring an undertaking because we conclude petitioners' appeal did not stay enforcement of the trial court's March 23, 1995, order directing the administrator to deliver the vials of Kane's sperm to Hecht to prevent injury or loss. (§ 7241, subd. (b).) Because an appeal cannot stay the effect of an order under section 7241, subdivision (b), no undertaking was either necessary or required in the first instance. Thus, it is immaterial in this case whether the trial court may have relied on an inapplicable statute in ordering the undertaking.

■ As a general rule, appeals in probate proceedings automatically stay the operation and effect of the appealed order. (§ 7241, subd. (a).) One exception to this rule, as noted, is where an undertaking has been ordered but not given. (§ 7241, subd. (c).) However, when the circumstances are such that it is necessary to take immediate action to prevent imminent injury or loss to a person or property, a probate court may direct the personal representative of the estate to exercise such powers as if no appeal were pending. (§ 7241, subd. (b).) Such an order is an additional exception to the stay provision of section 7241, subdivision (a). Subdivision (b) of section 7241 provides: "Notwithstanding that an appeal is taken from the order, for the purpose of preventing injury or loss to a person or property, the trial court may direct the exercise of the powers of the personal representative, . . . , *as though no appeal were pending.* Acts of the personal representative . . . pursuant to the directions of the court made under this subdivision are valid, *regardless of the result of the appeal.*" (Italics added.) Thus, while an order made pursuant to section 7241, subdivision (b) may be appealed (*Estate of Hammer, supra,* 19 Cal.App.4th 1621), the language the Legislature used in enacting this subdivision clearly empowers a trial court to direct such order to be immediately carried out unaffected by any subsequent appeal of the order, and without regard to the possible outcome on appeal.

This subdivision has not been the subject of any prior reported decisions. However, the Supreme Court in *Gold* v. *Superior Court* (1970) 3 Cal.3d 275 [90 Cal.Rptr. 161, 475 P.2d 193] construed an analogous provision which applies in guardianship and conservatorship proceedings. The operative language of the statute analyzed in *Gold* provided an order directing an act to prevent injury or loss to person or property was valid despite an appeal of

the order, and regardless of the result of the appeal.[5] (*Gold* v. *Superior Court, supra,* 3 Cal.3d at p. 279.) Because an order made under this section constituted an exception to the stay upon the filing of an appeal, the court reasoned the statutory exception should be narrowly construed and carefully restricted to extraordinary cases. "By specifically conditioning the application of the statute upon the prevention of injury or loss to person or property the Legislature has determined that the exception should be operative only in a limited class of cases. This language, with its emphasis upon preventive action, imports a sense of urgency. While such situations are not inconceivable, the necessity for immediate action to avert such potential injury or loss is not a common circumstance in the usual conservatorship proceeding. Thus, on its face, the language of the statute indicates (1) that the only instances properly falling within the ambit of the exception are those which present a necessity for preventive action against particular risk contemplated by the statute; and (2) that such instances are probably rare. In sum, the language of this statute strongly suggests that the exception applies only to the exceptional case involving a risk of imminent injury or loss." (*Gold* v. *Superior Court, supra,* 3 Cal.3d at p. 281.)

The court reasoned only a narrow interpretation of the exception could be consistent with the apparent legislative intent such orders would not be subject to appellate review. "The effect of [former] section 2102 [now 2751, subd. (b)] also supports this conclusion. When an order is made which is properly within the exception, the conservator's acts pursuant thereto are 'valid, irrespective of the result of the appeal.' (§ 2102 [now § 2751, subd. (b)].) *Where, as in the instant case, the trial court's order directs the very act which constitutes the subject matter of the appeal, the exception operates to effectively deprive the appellant of his appeal.* By validating the conservator's acts 'irrespective of the result of the appeal' and notwithstanding the fact that the appellant ultimately prevails, the Legislature has created an extraordinary procedure. *In essence, the Legislature appears to have determined that in some cases the need for speedy disposition of certain matters outweighs the interest in affording the affected parties a right of review.* It is not our province to pass upon the wisdom of this determination. However, the Legislature also appears to have determined that cases which do not present such exigencies should be governed by the normal procedures applicable to most cases, including a right to effective appellate review. Thus we think

---

[5] In *Gold,* the operative language of the statute provided: "An appeal from any judgment, order or decree shall stay the operation and effect thereof, except that, for the purpose of preventing injury or loss to person or property, the trial court may direct the exercise of the powers of the conservator, . . . . , as though no appeal were pending, and all acts of the conservator . . . pursuant to such directions shall be valid, irrespective of the result of the appeal." (Former § 2102, now § 2751, subd. (b).)

that the Legislature intended to make an automatic stay applicable to all cases within [former] section 2102 [now § 2751, subd. (b)] except those which clearly fall under the express exception. We think that the fulfillment of both of the above legislative objectives requires that the application of the exception in [former] section 2102 [now § 2751, subd. (b)] be carefully restricted. We therefore conclude that the section requires an affirmative showing in the trial court of extraordinary circumstances involving potential injury or loss of the sort contemplated by the statute before the exception applies." (*Gold* v. *Superior Court, supra,* 3 Cal.3d at pp. 281-282, italics added; see also *Conservatorship of Hart* (1991) 228 Cal.App.3d 1244, 1261 [279 Cal.Rptr. 249] [because one manifest effect of such an order is to abrogate, at least as a practical matter, an appellant's statutory right to review of the earlier order, exercise of the power granted by subdivision (b) must be clearly justified by a showing of risk of imminent injury or loss].)

Because the language of the statutory exception to appellate review in guardianship and conservatorship proceedings is virtually identical to section 7241, subdivision (b) in probate proceedings, several commentators similarly conclude orders made pursuant to this section are not subject to appellate review. (See, e.g., Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs 1 (The Rutter Group 1994) ¶¶ 7:80-7:81, p. 7-22, [probate court may direct the personal representative to exercise powers as though no appeal were pending and such acts will be valid regardless of the outcome on appeal]; Ross et al., Cal. Practice Guide: Probate (The Rutter Group 1995) ¶ 15:247b, p. 15-68.8 [acts of the personal representative pursuant to the probate court's directions under section 7241, subdivision (b) remain valid regardless of the outcome on appeal]; 1 Marshall & Garb, Cal. Probate Procedure (5th ed. 1991) Appeals, § 107, p. 1-19 [an appeal of an order stays its operation and effect unless the probate court directs the exercise of the powers of the personal representative in order to prevent injury or loss to a person or property resulting from a stay pending appeal].)

■ An interpretation of section 7241, subdivision (b) which would allow appeals of orders made pursuant to this section to stay their operation and effect would be directly contrary to the clear legislative mandate such orders be operative "as though no appeal were pending." Indeed, such an interpretation would ignore the Legislature's express recognition some situations present such an extraordinary risk of injury or loss that they require immediate intervention by the probate court to make orders which can be implemented immediately despite the filing of an appeal, and regardless of the result on appeal. Such necessary and important authority would be completely emasculated if a litigant could override that authority by the

mere filing of a notice of appeal. Such a conclusion would leave a probate court powerless to prevent real imminent and irreparable injury or loss. Finally, and not insignificantly, an interpretation which would allow an appeal to stay enforcement of such an order would render section 7241, subdivision (b) meaningless. ■ Under general rules of statutory interpretation, an interpretation which has the effect of making statutory language null and void is to be avoided. (*Prager* v. *Isreal* (1940) 15 Cal.2d 89, 93 [98 P.2d 729]; *People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1010 [239 Cal.Rptr. 656, 741 P.2d 154].)

■ In this case the probate court directed release of three vials of Kane's frozen sperm to Hecht in order to prevent imminent injury or loss. At that point the administrator was obligated to implement the court's order, as if no appeal was filed or would be filed, and regardless of the outcome on appeal. (§ 7241, subd. (b).) Consequently, it was unnecessary to require petitioners to post an undertaking in an attempt to achieve the same result. Accordingly, we direct the trial court to vacate its June 20, 1995, order permitting a stay pending appeal upon the posting of petitioners of an undertaking and further direct the trial court to order the administrator to comply forthwith with its order of March 23, 1995, directing delivery of the vials of sperm to Hecht to prevent injury or loss.[6]

## DISPOSITION

The petition is denied. For the reasons stated in this opinion, the respondent court is directed (1) to vacate its order of June 20, 1995, permitting a stay pending appeal upon the posting by petitioners of an undertaking; and (2) to issue an order directing the administrator to comply forthwith with the probate court's March 23, 1995, order directing delivery of three vials of decedent's frozen sperm to real party in interest in order to prevent injury or loss.

---

[6]At oral argument petitioners requested this court to construe their petition for writ of mandate as a petition for writ of supersedeas. (Code Civ. Proc., § 923.) They requested this court to exercise its discretion and issue a stay pending resolution of the appeals in order to override the effect of the trial court's order made pursuant to section 7241, subdivision (b).

We acknowledge we have the power to issue a writ of supersedeas and to grant the relief petitioners seek. (Code Civ. Proc., § 923; *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Supervisors* (1967) 255 Cal.App.2d 51, 53 [62 Cal.Rptr. 819].) We further note our authority to condition any such stay on the posting of an undertaking (the very requirement petitioners seek to avoid in this writ proceeding) or to condition a stay on any other terms deemed appropriate under the circumstances. (See, e.g., *Estate of Murphy* (1971) 16 Cal.App.3d 564 [94 Cal.Rptr. 141].) However, we expressly decline to exercise our discretionary authority to issue a writ of supersedeas in this case.

Good reason appearing, this decision shall be final as to this court within 10 days of the date hereof.

Lillie, P. J., and Woods (Fred), J., concurred.