Filed 4/30/15  Anaheim Hills Planned Community Assn. v. Chen CA4/3
Received for posting 5/8/15

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANAHEIM HILLS PLANNED COMMUNITY ASSOCIATION,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KANG-SHEN CHEN et al.,<br><br>    Defendants and Appellants. | G046408, G047582<br><br>(Super. Ct. No. 30-2009-00292597)<br><br>ORDER MODIFYING OPINION AND DENYING PETITIONS FOR REHEARING; CHANGE IN JUDGMENT |

The request for modification filed by Kang-Shen Chen is hereby GRANTED in part.  The opinion filed in this case on April 2, 2015 is hereby ORDERED modified as follows:

1.  On page 28 of the opinion, the following sentence is deleted:  "The orders are affirmed."

2.  The following sentences are inserted in its place:  "The August 31, 2012 order awarding $134,494.30 in attorney fees and costs is affirmed.  The October 23, 2012 order awarding an additional $40,190.20 in attorney fees and costs is hereby reversed and the matter is remanded to the trial court for further consideration in light of this opinion."

This modification effects a change in the judgment only with respect to the October 23, 2012 order awarding $40,190.20 in attorney fees and costs.  The petitions for rehearing filed on April 17, 2015 are DENIED.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.

Filed 4/2/15  Anaheim Hills Planned Com. Assn. v. Chen CA4/3 (unmodified version)

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ANAHEIM HILLS PLANNED COMMUNITY ASSOCIATION, Plaintiff and Respondent, v. KANG-SHEN CHEN et al., Defendants and Appellants. | G046408, G047582 (Super. Ct. No. 30-2009-00292597) O P I N I O N |

Appeals from judgments and orders of the Superior Court of Orange County, Franz E. Miller, Judge.  The appeal in case No. G046408 is dismissed.  In case No. G047582, the second amended judgment is affirmed as modified and the orders are affirmed.

Kang-Shen Chen and Shu-Jen Chen, in pro. per.; Morris & Stone and Aaron P. Morris for Defendants and Appellants.

Gordon & Rees, Jeffrey A. Swedo, Tara L. Martin, Stephanie P. Alexander and Nathaniel J. Tarvin for Plaintiff and Respondent.

\*          \*          \*

Plaintiff and respondent Anaheim Hills Planned Community Association (Association) commenced litigation against defendants and appellants Kang-Shen Chen and Shu-Jen Chen in connection with a plethora of purported violations of the covenants, conditions and restrictions (CC&R's) affecting their residential real property. An oral settlement was reached on the record, for the Chens to take certain actions to remediate the violations. The court subsequently entered a stipulated judgment encapsulating the terms of the settlement, ordering an injunction, finding that the Chens already were in default of the injunction, and providing that the Association was entitled to an expedited trial on damages. Before the trial took place, the Chens filed a notice of appeal, in case No. G046408 (First Appeal).

While the First Appeal was pending, the trial on damages went forward. The court, in a second amended judgment, awarded the Association $508,589.46 in damages. The Chens filed a second notice of appeal, from the damages award and from two attorney fees awards, in case No. G047582 (Second Appeal).

We conclude the First Appeal was taken from a nonappealable judgment. The judgment appealed from was an interlocutory decree, inasmuch as it specifically contemplated a trial on damages in order to fully resolve the dispute between the parties. Given that, this court has no jurisdiction to hear the First Appeal and it is hereby dismissed.

In the Second Appeal, we decline to review the Chens' argument that the Association's consent to the settlement agreement was defective, inasmuch as they failed to make an objection below, so the trial court and the Association could have corrected any deficiency. Furthermore, we reject the Chens' contention that the settlement agreement is unenforceable due to a lack of meeting of the minds. However, we agree that the court overstepped its bounds in finding that the Chens were in violation of an injunction that had never been issued and in creating terms for the parties. On remand, the second amended judgment shall be modified to reflect that the Chens were in default

2

of the settlement agreement, as opposed to the injunction, to delete the damages award, and to reflect that the Association is entitled to an expedited trial on damages only after it has performed remediation work. We affirm the second amended judgment as so modified and affirm the attorney fees awards. In addition, we deny the Association's request for judicial notice and for the making of evidentiary findings on appeal.

I

FACTS

*A. Presettlement Litigation:*

The Association filed a lawsuit against the Chens for nuisance, breach of contract (CC&R's), injunctive relief and declaratory relief. The Association alleged, inter alia, that the Chens had failed to comply with various provisions of the CC&R's affecting their residential real property. They alleged, for example, that the Chens had built various outbuildings on their property without Association approval, some of which were either abandoned or only partially constructed, that the Chens had used unapproved fencing materials including barbed wire, that they had left their swimming pool either empty or partially filled with stagnant water, that they had stored on the property unsightly debris, trash, and construction materials including barbed wire, and that they had discharged waste water into a natural stream emanating from a spring.

With trial set for June 20, 2011, the Association, on May 5, 2011, filed an ex parte application for an order compelling the Chens to permit a site inspection of their property. The Association represented that the Chens had said they would remedy claimed violations if provided with a list of them, but that they repeatedly had refused to cooperate in the activities necessary for the Association to prepare a list. Purportedly, Association representatives met with Kang-Shen Chen and the Chens' architect on the property on September 16, 2010, and the architect agreed to prepare a site plan documenting each improvement on the property. The intention was to use the site plan as a basis for the discussion of the various violations. However, the Association later

3

learned that the architect had been discharged and no site plan was forthcoming. The Association further represented that, thereafter, it retained its own architectural expert to perform a site inspection and, on March 23, 2011, noticed an April 29, 2011 site inspection. However, when the date and time for the site inspection arrived, the Chens refused to permit access to the property. Consequently, the Association requested the court order compelling the Chens to permit a site inspection.

The court granted the request for an order compelling a site inspection, to take place on May 24, 2011. It further ordered the Chens to pay $2,250 in sanctions to the Association.

*B. Settlement Agreement:*

On June 24, 2011, the Association filed a memorandum of settlement, in which it represented that the Chens had agreed to a stipulated judgment on the terms stated therein. It also filed a joint list of exhibits to the settlement agreement. One of those exhibits was a five-page matrix of violations. The terms of the settlement were read into the record at a hearing that same date.

As stated verbally on the record, the parties agreed to a stipulated judgment including an injunction requiring the Chens to remediate or remove any and all violations specified in the matrix, in a manner that complied with the Association's CC&R's and architectural standards, as well as the subassociation's CC&R's. The Chens agreed to hire a licensed architect to prepare a comprehensive removal and remediation plan addressing each point identified in the matrix. The comprehensive plan would be submitted to both the Association and the subassociation for approval and the Chens would undertake no work before obtaining those approvals.

The Chens further agreed that they would submit their first comprehensive plan no later than 60 days after June 24, 2011. The Association's architectural review committee would approve or reject the plan within 45 days. If the plan was rejected, up

4

to two more 60-day-submission/45-day-review periods would follow.  The Chens would have one year from the date of approval to complete the work.

The stipulated judgment was to contain a mandatory injunction requiring the Chens to perform in the above described manner.  It was to further provide:  "If there's a default . . . [the Association] will have the right to an expedited court . . . trial to prove up the costs to [the Association] of having to demolish and remediate things on the property that are in violation of the CC&R's. . . .  [The Association] has the right to enter their property and commence that work at any time."

The parties also agreed that the Association would have a right to bring an attorney fees motion.  However, the issue of the prevailing party was reserved for court determination.

The parties expressed their intention to prepare a formal written settlement agreement.  However, they further agreed that, if they were unable to reach agreement on a writing, the court transcript plus the exhibits would constitute a binding settlement agreement, enforceable under Code of Civil Procedure section 664.6.[1]

After counsel for the Association finished reciting the agreement for the record, the Chens each expressed their understanding and agreement to the terms.

*C.  Judgment and First Appeal:*

Two months later, the Association filed a motion for entry of judgment pursuant to section 664.6.  In its motion, the Association represented that it had prepared a written settlement agreement encapsulating the agreed-upon terms, but that the Chens had refused to sign it.  So, the Association requested that the court enter judgment on the stipulated settlement.

---

[1]     All subsequent statutory references are to the Code of Civil Procedure, except where otherwise specifically stated.

On January 5, 2012, the court entered a judgment and permanent injunction in favor of the Association, pursuant to section 664.6. That judgment included a first injunction "for remediation and/or removal of all conditions on the subject property which presently violate" the CC&R's affecting the property. It also included a second injunction authorizing the Association to enter the property "and demolish, repair, or remediate each and every CC&R violation on the Subject Property as set forth in the attached Matrix of Violations . . . ." The judgment recited that the Chens had already defaulted under the provisions of the first injunction and that the Association had a right to an expedited court trial, on April 2, 2012, to prove up the cost of the demolition and remediation of the violations.

The Chens filed a motion for reconsideration. The motion was denied on January 18, 2012.

An amended judgment was entered on January 23, 2012. The amended judgment clarified that it was entered "against Defendants, Kang-Shen Chen, an individual; Shu-Jen Chen, an individual; and Shu-Jen Chen, as Trustee of the Shu-Jen Chen Trust[.]" The Chens filed the First Appeal.

On February 8, 2012, the Association filed a motion for attorney fees and costs, seeking an award of $149,337.14 as the prevailing party in the dispute.

D. *Second Amended Judgment and Second Appeal:*

On July 5, 2012, while the First Appeal was pending, the court held a trial on damages. On July 30, 2012, it entered a "second amended judgment." (Capitalization omitted.) The second amended judgment restated the provisions of the first amended judgment and added a new provision entitled "judgment for damages." (Capitalization omitted.) That provision stated the Association had "exercised its right to an expedited trial to prove up the cost of demolition and remediation of all violations . . . ." The court awarded $508,589.46 in damages.

6

By minute order dated August 31, 2012, the court awarded the Association $134,494.30 in attorney fees and costs. On September 24, 2012, the Association served the Chens with notice of entry of the award.

Thereafter, the Association filed a motion dated September 26, 2012, seeking an additional $56,331.70 in attorney fees and costs, with respect to the damages trial. The court awarded the Association an additional $40,190.20 in attorney fees and costs.

The Chens filed the Second Appeal. This court consolidated the First and Second Appeals.

II

DISCUSSION

A. *First Appeal (G046408):*

*(1) Supplemental briefing order—*

By order of January 30, 2015, we directed the parties to file supplemental letter briefs addressing, inter alia, "whether the first amended judgment was a final, appealable judgment, or a nonappealable interlocutory decree (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1507; *Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1251-1252)." We gave each party an opportunity to file a responsive supplemental letter brief. Each party filed a supplemental letter brief and the Chens filed a responsive supplemental letter brief.

*(2) One final judgment rule—*

"The existence of an appealable judgment is a jurisdictional prerequisite to an appeal. Thus, this court is obligated to review the question of appealability. [Citations.]" (*Doran v. Magan* (1999) 76 Cal.App.4th 1287, 1292.) So, the first point for our consideration is whether the first amended judgment was final and appealable, or whether the First Appeal must be dismissed as taken from a nonappealable interlocutory

7

decree. The parties now appear to largely agree that the First Appeal was taken from a nonappealable judgment.

As the Association well observes, our Supreme Court has stated: "The right to appeal is wholly statutory. [Citation.] Code of Civil Procedure section 904.1 lists appealable judgments and orders. Chief among them is a 'judgment' that is not interlocutory, e.g., a final judgment. A judgment is the final determination of the rights of the parties [citation] ""'when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.'"" [Citations.] "'It is not the form of the decree but the substance and effect of the adjudication which is determinative. As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that *where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final,* but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory.'" [Citations.]" (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5, fn. omitted.)

In the matter before us, the first amended judgment did not terminate the litigation between the parties, leaving nothing to be done but enforcement. It is not the case that there was """*no issue . . . left for future consideration except the fact of compliance or noncompliance with the terms of the first decree . . . .*"""" (*Dana Point Safe Harbor Collective v. Superior Court*, *supra*, 51 Cal.4th at p. 5.) Rather, something """*further in the nature of judicial action on the part of the court* [was] *essential to a final determination of the rights of the parties . . . .*"""" (*Ibid.*) Specifically, a trial on damages for the Chens' breach of their settlement obligations was required in order to make a final determination of the rights of the parties. Indeed, the first amended judgment stated explicitly that the Association was entitled to a trial, to be held on April 2, 2012, on the costs to it of demolition and remediation.

8

True, it is generally the case "that a judgment on an order granting a motion to enforce a settlement under section 664.6 is appealable . . . ." (*Critzer v. Enos*, *supra*, 187 Cal.App.4th at p. 1251.) This notwithstanding, for the judgment to be appealable, it must finally dispose of the litigation, and it is the substance and effect of the judgment which determines whether it is appealable, not its label. (*Id.* at p. 1250.) When "'the intended substance and effect of the judgment is to finally dispose of the . . . action, the judgment is appealable . . . .'" (*Id.* at pp. 1250-1251.) But here, the intended substance and effect of the first amended judgment was to determine that the parties had entered into a binding settlement agreement, which the Chens had already breached, and to set a trial date for the determination of damages. Clearly, the first amended judgment did not finally dispose of the lawsuit.

The Chens cite *Walton v. Magno* (1994) 25 Cal.App.4th 1237 as "[a] highly analogous case." There, the plaintiffs sued the defendant for malicious prosecution and a judgment in favor of the defendant was entered in accordance with the jury verdict. The court thereafter granted the plaintiffs' motion for judgment notwithstanding the verdict and ordered a trial on damages. The defendant filed an appeal from the order granting the plaintiffs' motion. (*Id.* at p. 1239.) The appellate court dismissed the appeal as taken from a nonappealable order. It stated that the defendant was "in effect appealing from an interlocutory judgment of liability while the issue of damages [had] yet to be tried." (*Id.* at p. 1241.) It also said: "The actions between the parties have not yet been finalized. To permit an appeal at this juncture would result in at least two appeals, a practice which is to be discouraged." (*Ibid.*)

*Walton v. Magno*, *supra*, 25 Cal.App.4th 1237 is distinguishable in that the appeal in that case was taken from a nonappealable order granting a motion for judgment notwithstanding the verdict (*id.* at p. 1240), whereas the First Appeal in the present case was taken from an amended judgment. Nonetheless, the first amended judgment in the case before us, like the order in *Walton*, is tantamount to "an interlocutory judgment of

liability while the issue of damages [had] yet to be tried." (*Id.* at p. 1241.) That being so, *Walton* provides persuasive authority in support of our conclusion that the first amended judgment in the case before us is a nonappealable interlocutory decree.

Interestingly, while the Chens appear to concede that the first amended judgment is a nonappealable interlocutory decree, they nonetheless state that "[a]lternatively, the Amended Judgment could be viewed as final since it determined all the rights of the parties by enforcing the putative Settlement Agreement." (Boldface omitted.) In other words, the first amended judgment determined that the parties had entered into a binding settlement agreement on the record, and further determined that the Chens were in breach, the Association had a right to enter the property and perform the remediation work, and the Association was also entitled to an expedited trial on damages. All the parties' *rights* had been determined; only the *amount* of damages, like the amount of attorney fees, remained to be determined. This argument would have been more persuasive had the court entered a self-contained stipulated judgment simply reciting the terms of the settlement agreement. But here, the first amended judgment stated that a trial on the cost of the remediation work would follow, on a specified date, clearly contemplating further court action to resolve the dispute between the parties.

The Chens further argue that just as the right to bring a subsequent attorney fees motion does not preclude an appeal from a judgment, a right to have a subsequent trial on damages ought not preclude an appeal from the first amended judgment. They overlook the fact that a postjudgment order awarding attorney fees is a separately appealable order, under section 904.1, subdivision (a)(2).

10

For the foregoing reasons, we conclude the First Appeal was taken from a nonappealable judgment and must be dismissed.[2]

B.  *Second Appeal (G047582):*

*(1)  Scope of appeal—*

In their second notice of appeal, filed October 26, 2012, the Chens stated their appeal was taken "from the Judgement entered on August 31, 2012 . . . (including ruling on 10-23-12)[.]"  They also said:  "Notice of entry of Judgement was served . . . , [o]n September 13, 2012."

We construe the reference to the August 31, 2012 judgment as intending to be a reference to the August 31, 2012 postjudgment order awarding $134,494.30 in attorney fees and costs.  We construe the reference to the October 23, 2012 ruling as a reference to the October 23, 2012 postjudgment order awarding an additional $40,190.20 in attorney fees and costs.

The question is the significance of the statement:  "Notice of entry of Judgement was served . . . , [o]n September 13, 2012."  In their opening brief in the Second Appeal, the Chens state September 13, 2012 was the date of filing (as opposed to service) of the notice of entry of the second amended judgment.  They argue that it was perfectly clear that their notice of appeal therefore addressed not only the two orders awarding attorney fees, but also the damages award under the second amended judgment.

In support of their argument, the Chens cite an inapposite page of the record showing only that the second amended judgment was filed on July 30, 2012.  We have located on our own a copy of the notice of entry of the second amended judgment,

---

[2]        To the extent we construe the Chens' first notice of appeal as encompassing the January 18, 2012 order denying their motion for reconsideration, we note that an order denying a motion for reconsideration is also nonappealable.  (*Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1576-1577; *Tate v. Wilburn* (2010) 184 Cal.App.4th 150, 156.)

11

which the Association served on the Chens on September 12, 2012 and which was filed on September 13, 2012.

We must disagree with the Chens that it was perfectly clear that when they filed a notice of appeal from an August 31, 2012 "judgment" and stated notice of entry was served on September 13, 2012 (rather than September 12, 2012), they meant to challenge the damages award under the July 30, 2012 second amended judgment. Perhaps they misstated the date of service of the August 31, 2012 order. Or, perhaps, as the Chens now suggest, they misdescribed the ruling they intended to challenge, notice of entry of which was filed, not served, on September 13, 2012.

As the Chens correctly observe, California Rules of Court, rule 8.100(a)(2) provides in pertinent part: "The notice of appeal must be liberally construed. The notice is sufficient if it identifies the particular judgment or order being appealed." The notice will be liberally construed "'"so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced."' [Citations.]" (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 20.)

Although we question whether it was reasonably clear what the Chens were trying to appeal from, the Association does not argue the point. Rather, in its respondent's brief, it says: "The Notice of Appeal does not refer to the Second Amended Judgment specifically but it does refer to a Notice of Entry of Judgment served on September 13, 2012." Moreover, the Association concedes "the second amended judgment is at issue in this appeal," and addresses the second amended judgment in its respondent's brief. This being the case, we cannot conclude the Association was prejudiced by the lack of clarity in the Chens' notice of appeal.

Consequently, we construe the notice of appeal in the Second Appeal as challenging: (1) the August 31, 2012 postjudgment order awarding $134,494.30 in

12

attorney fees and costs; (2) the October 23, 2012 postjudgment order awarding an additional $40,190.20 in attorney fees and costs; and (3) the second amended judgment.

*(2) Code of Civil Procedure Section 664.6—*

Section 664.6 provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

The standard of review when a settlement agreement is the subject of a section 664.6 motion was explained in *Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884. "A trial court, when ruling on a section 664.6 motion, acts as a trier of fact. [Citation.] Section 664.6's 'express authorization for trial courts to determine whether a settlement has occurred is an implicit authorization for the trial court to interpret the terms and conditions to settlement.' [Citation.] The proper standard of review, therefore, is whether the trial court's ruling [construing] the settlement . . . is supported by substantial evidence. [Citation.]" (*Id.* at p. 889.)

"[A] trial court cannot enforce a settlement under section 664.6 unless the trial court finds the parties expressly consented . . . to the material terms of the settlement. [Citation.]" (*Bowers v. Raymond J. Lucia Companies, Inc.* (2012) 206 Cal.App.4th 724, 732.) "A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts. [Citation.] An essential element of any contract is 'consent.' [Citations.] The 'consent' must be 'mutual.' [Citations.]" (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810-811.) "'The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe.' [Citation.]" (*Id.* at p. 811.) "The parties' outward manifestations must show

13

that the parties all agreed 'upon the same thing in the same sense.' [Citation.]" (*Ibid.*) We must be mindful that "nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon." (*Weddington Productions, Inc. v. Flick*, *supra*, 60 Cal.App.4th at p. 810.)

We address whether the trial court's determinations are supported by substantial evidence only after we determine whether the statutory requirements of section 664.6 are met. The construction and application of the statute raise questions of law, subject to our independent review. (*Conservatorship of McElroy* (2002) 104 Cal.App.4th 536, 544.)

### (3) Litigant Consent—

The Chens argue that the court erred in entering a judgment on the parties' purported settlement agreement because the Association never stated on the record that it agreed to the terms. They further argue that, because of this, the court had no subject matter jurisdiction to enter judgment. Finally, they contend that they are free to raise this issue of subject matter jurisdiction for the first time on appeal.

### (a) Background

Right before reciting the settlement agreement for the record, counsel for the Association stated: "First I'd like to introduce my clients who are here. Tom Oblonsky, who is the president of the Association, and Paul Beckman of Alta Property Management, they are the property manager for the Association." He continued: "And Mr. Beckman has the full authority of the Association's board of directors, their subdirectors. They voted to approve the settlement and to vest in Mr. Oblonsky all authority to enter into this settlement today."

At the end of the hearing, the court questioned each of the Chens about their understanding of, and agreement to, the settlement terms. The court then stated that representatives from both sides were present and it found "that both sides [had]

14

knowingly, voluntarily, and intelligently entered into [the] agreement with a full understanding of its meanings and terms." Counsel for the Association said, "So agreed." However, the Association concedes on appeal that the court did not specifically elicit the consent of either Oblonsky or Beckman on the record, and that it accepted the representation of counsel that the Association did consent.

### (b) Manifestation of consent

According to the Chens, the court erred in doing so. As they well point out, the Supreme Court in *Levy v. Superior Court* (1995) 10 Cal.4th 578, in a case having to do with a written settlement agreement, interpreted section 664.6 to require an expression of consent by the litigants themselves, not their attorneys. (*Levy v. Superior Court*, *supra*, 10 Cal.4th at pp. 580, 584.) This interpretation has been extended to oral settlement agreements as well. (*Critzer v. Enos*, *supra*, 187 Cal.App.4th at pp. 1254-1255.)

In *Critzer v. Enos*, *supra*, 187 Cal.App.4th 1242, the appellate court held that the trial court erred in granting a motion to enforce a settlement under section 664.6. (*Id.* at pp. 1246, 1260.) There, two of the parties were not present when the oral settlement agreement was recited on the record, although their attorneys were present. (*Id.* at pp. 1257, 1261.) The court held that the settlement was unenforceable because those two parties had not given their personal consent to the recited terms. (*Id.* at p. 1257.) The case before us is distinguishable, of course, because here the Association's representative was present.

The Chens say this makes no difference, citing *Conservatorship of McElroy*, *supra*, 104 Cal.App.4th 536. In that case, three parties and their attorneys were in court when the settlement was recited. The reporter's transcript showed that two of the parties were asked about their understanding, and that the court stated "they nodded their assent." (*Id.* at pp. 546-547.) The reporter's transcript did not show that the third party was asked whether she agreed. However, a videotape of the proceeding indicated that the

15

third party's own attorney asked her whether she agreed. (*Id.* at p. 547.) This being the case, the appellate court said the trial court's remark that "they nodded their assent" was ambiguous as to whether he was referring to three of the parties or only two. (*Ibid.*) In the end, however, it did not matter. The appellate court held "nods are insufficient to show oral assent under the statute . . . ." (*Id.* at p. 552.) According to the Chens, *Conservatorship of McElroy* is dispositive because it shows that even when a party is present in court with his or her attorney when the settlement is recited on the record, and nods in agreement, there will be a failure of litigant consent as required under section 664.6.

### (c) Waiver of argument

The Association argues it is too late to raise the issue of defective litigant consent on appeal. We agree.

"It is a fundamental proposition that '"[a]n appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been but was not presented to the lower court by some appropriate method . . . ." [Citation.]' [Citation.]" (*Critzer v. Enos*, *supra*, 187 Cal.App.4th at p. 1261.) "'"[I]t is unfair to the trial judge and to the adverse party to take advantage of an error on appeal when it could easily have been corrected at the trial."'" (*People v. Alistar Ins. Co.* (2003) 115 Cal.App.4th 122, 126, fn. omitted.)

We apply that rule here. The Association's representative was present at the hearing and could have verbalized his agreement had the Chens made a timely objection.[3]

---

[3] The record on appeal contains the declaration of Oblonsky wherein he stated he was president of the Association's board of directors at the time of the June 24, 2011 hearing, at which he was present. Oblonsky declared that he had authority to enter into the settlement agreement placed on the record and that he was standing next to the Association's counsel as he recited the terms before the court. In conclusion, Oblonsky stated that, by his declaration, he acknowledged the Association's agreement to the settlement terms. The Association argues the foregoing shows that it would have been

16

The Chens argue against the application of the rule, again citing *Critzer v. Enos*, *supra*, 187 Cal.App.4th 1242. They say the court in *Critzer* acknowledged that an appellate court usually will not consider procedural defects where no objection was made in the trial court, but decided to address the issue of litigant consent anyway because the issue involved undisputed evidence and raised a pure question of law.

Their characterization of the decision in *Critzer v. Enos*, *supra*, 187 Cal.App.4th 1242 is misleading. In *Critzer*, counsel for the parties opposing enforcement of the settlement raised the issue of party consent orally at the hearing on the section 664.6 motion. The attorney "noted that not all of the parties had given their assent when the [s]ettlement was recited on the record and raised a question as to whether the matters recited in court were subject to enforcement under section 664.6." (*Critzer v. Enos*, *supra*, 187 Cal.App.4th at p. 1261.) He stated "'the record [was not] truly a 664.6 settlement, . . . inasmuch as the HOA's representative was not there to affirm the terms . . . .'" (*Ibid.*)

In addressing whether to consider the issue of party consent on appeal, the *Critzer* court stated that "although [the opposing parties] could have been more expansive in their discussion of whether the absence of consent by all parties precluded enforcement of the [s]ettlement under section 664.6, we conclude that they raised the issue sufficiently below . . . to preclude its forfeiture." (*Critzer v. Enos*, *supra*, 187 Cal.App.4th at p. 1262.) The court continued: "Moreover, 'when the issue involves undisputed evidence and raises a pure question of law, we may consider it for the first time. [Citation.]' [Citation.]" (*Ibid.*)

possible to cure, by declaration, any defect in the Association's expression of consent, had the Chens only made a timely objection. (See *Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421, 1427, 1432.) Even were this true, we would not consider the declaration because it was filed only after the second amended judgment was entered, and therefore was not considered by the court in making its determination.

17

*Critzer v. Enos*, *supra*, 187 Cal.App.4th 1242 is distinguishable. Where in that case the opposing parties *did* raise the issue of defective litigant consent in the trial court, such that their argument was not forfeited, here the Chens failed to raise the issue in the trial court. Although the *Critzer* court in dictum provided an alternate ground for considering the argument on appeal, we nonetheless decline to consider the issue for the first time on appeal in the matter before us. A timely objection from the Chens would have given both the trial court and the Association an opportunity to put Oblonsky's consent on the record.

The Chens maintain that they have not waived their right to raise the issue of defective consent for the first time on appeal, inasmuch as it pertains to the subject matter jurisdiction of the trial court. (*Casa De Valley View Owner's Assn. v. Stevenson* (1985) 167 Cal.App.3d 1182, 1191, fn. 4 [subject matter jurisdiction may be raised for the first time on appeal].) They explain that, without the agreement of all parties as required by section 644.6, the court had no jurisdiction to grant the motion for entry of judgment. They cite *Wackeen v. Malis* (2002) 97 Cal.App.4th 429 in support of their position.

*Wackeen* addressed whether the court had jurisdiction to enforce a settlement agreement after the lawsuit had been dismissed. (*Wackeen v. Malis*, *supra*, 97 Cal.App.4th at p. 433.) The court held that section 664.6 provides "courts with continuing jurisdiction over parties and their litigation, for the purposes of enforcing their settlement agreement, despite a suit's having been dismissed after the execution of the agreement," provided certain requirements are met. (*Ibid.*) The parties are required, for example, to make a request for retention of jurisdiction before the lawsuit is dismissed. If they fail to do so, "enforcement of the agreement must be left to a separate lawsuit." (*Ibid.*) In the case before it, the *Wackeen* court held that the parties had failed to make a request for retention of jurisdiction before the lawsuit was dismissed and that, therefore,

18

the trial court lacked subject matter jurisdiction over the section 664.6 motions to enforce a settlement agreement. (*Id.* at pp. 432-434, 437, 439.)

The matter before us is distinguishable. Here, the Association brought its section 664.6 motion before dismissal. The court did not lack subject matter jurisdiction over the motion. To the contrary, "[w]hen a court has jurisdiction over the parties and the subject matter of a suit, its jurisdiction continues until a final judgment is entered. [Citation.]" (*Wackeen v. Malis*, *supra*, 97 Cal.App.4th at p. 437.) No final judgment had been entered when the Association brought its motion and the court had subject matter jurisdiction to rule upon it.

*(4) Terms of Settlement Agreement—*

The Chens argue that even if this court concludes the trial court did not err in entering a judgment, there are a number of reasons why the court erred in fashioning the terms of the judgment.

*(a) Second amended judgment*

The second amended judgment, in part one thereof, ordered an injunction compelling the Chens to submit their comprehensive architect-prepared remediation plan to the designated architectural committees within certain timeframes, and to perform the remediation work within one year of approval. It further provided that the Chens' "failure to comply with any of the above provisions set forth in Part I of this Amended Judgment shall constitute a default . . . of this Amended Judgment and Injunction."

In part two, the second amended judgment stated that the Chens already had defaulted "under the provisions of the Injunction set forth in Part I" and that the Association had "the right to an expedited court (non-jury) trial on April 2, 2012, to prove up the cost of demolition and remediation of all violations on the Subject property . . . ." The second amended judgment continued: "Further, a second Injunction is hereby issued authorizing [the Association] to enter the Subject Property and demolish, repair, or remediate each and every CC&R violation on the Subject Property as set forth in the

19

attached Matrix of Violations . . . .  [The Association] shall have the option of entering the Subject Property *before or after* the damages trial as provided in this Part II."  (Italics added.)

In addition, the second amended judgment recited that the Association had "exercised its right to an expedited trial to prove up the cost of demolition and remediation of all violations . . . .  After having fully considered the arguments of all parties . . . , as well as the evidence presented, the Court award[ed] damages . . . in the sum of $508,589.46."

The second amended judgment continued:  "[The Association] may expend an amount not to exceed $508,589.46 to remediate the violations on the Subject Property.  [The Association] shall obtain bids from no fewer than two licensed, qualified contractors to perform the work . . . .  [The Association] is to accept the lower bid . . . .  If the remediation is completed for less than the damages award, [the Association] is to refund the balance of any money collected on the judgment to [the Chens]."

### (b)  Court creation of terms

The Chens argue that, in entering the second amended judgment, the court erred in creating material terms to which the Chens never agreed.  They call attention to the provision stating "[the Association] shall have the option of entering the Subject Property *before or after* the damages trial . . . ."[4]  (Italics added.)  They say they never agreed to a provision that would allow a trial on damages, and an award of damages, for work the Association had never undertaken.  Rather, they expected only that, in the event of their default, the Association could enter their property and make repairs, then request reimbursement, and only after that obtain a trial on damages.

---

[4]      To be precise, we observe the record indicates that the judgment, first amended judgment, and second amended judgment were each drafted by counsel for the Association.

20

The reporter's transcript shows that the following term was recited into the record: "If there's a default in part one, the Chens stipulate that [the Association] will have the right to an expedited court . . . trial to prove up the costs to [the Association] of having to demolish and remediate things on the property that are in violation of the CC&R's. [The Chens] today stipulate that [the Association] has the right to enter their property and commence that work at any time. Of course, . . . if the [Chens] are in compliance with part one, [the Association] will not do this."[5]

The foregoing language shows the parties agreed that if the Chens failed to perform their obligations, the Association had "the right to enter their property and commence . . . work at any time." The words "any time" are simple enough and show the parties did not contemplate that the Association would have to await a trial on damages before commencing work. The Chens agree to this much. However, those words also indicate that the Association could delay, that it was not required to undertake work as soon as the Chens defaulted.

The question is whether those words are fairly construed to mean that the Association could first obtain an award of damages and then undertake the work. We read the words "any time" together with the language of the agreement that the Association was entitled "to an expedited court . . . trial to prove up the costs to [the Association] of having to demolish and remediate" the items shown on the matrix of violations. Query whether these provisions could be construed as giving the Association a right to an immediate trial on damages, with the work to be performed afterwards. If so

---

[5]      We note that this language tracks fairly closely the language contained in the Association's memorandum of settlement filed by the Association on the date the settlement was placed verbally on the record. The memorandum states: "In the event [the Chens] default under the Part I Injunction, [the Association] shall have the right to an expedited court (non-jury) trial to prove up the cost of demolition and remediation. [The Chens] now stipulate to a second injunction that [the Association] has the right to enter [their] property and demolish, repair, or remediate all CC&R violations in the event [they] default under the Part I Injunction."

21

construed, however, the agreement would leave unanswered questions about what would happen after the Association obtained a damages award.

The court filled in the gap by providing that the Association was required to obtain at least two bids, accept the lower bid, and refund to the Chens the difference between the cost of performing the work and the amount of the $508,589.46 judgment. At this point, we must agree with the Chens that the court created material terms to which they did not agree. There is nothing in either the settlement recited on the record, or for that matter the Association's memorandum of settlement terms filed with the court on the hearing date, that described a bidding procedure or that made clear the Chens would have to pay a six-figure damages award before any work was performed and hope to receive a refund at some undesignated time in the future.

Yet we also see nothing in either the settlement agreement recited on the record or the Association's memorandum of settlement terms that establishes the procedures the Chens prefer. The Chens assert that, because the CC&R's were attached as an exhibit to the agreement, this shows the parties agreed to follow the provisions of Article IV, Section 7 thereof permitting the Association to perform repairs, then request reimbursement from the owner, and then record a mechanic's lien if no reimbursement is made. They contend that they contemplated that these procedures would be followed before there was any damages trial.

However, the Chens' characterization of the settlement is inconsistent with the plain terms thereof. The term "expedited court trial" had to have some meaning. We construe it as providing the Association with the option of obtaining a court trial as soon as it had performed work on the property, not as requiring it to pursue reimbursement from the Chens, record a mechanic's lien, and thereafter go to trial.

The Association maintains that the settlement entitled it to obtain a damages award before ever undertaking any work. Moreover, it says that the Chens have waived any argument to the contrary by failing to raise the issue in their briefing in the

22

First Appeal. However, as we have already said, the first amended judgment was a nonappealable interlocutory decree, and the Chens had no right to appeal therefrom. That being the case, their argument is properly raised in the Second Appeal.

The Association also maintains that the language of the settlement was perfectly clear—it was entitled to an expedited court trial to prove up the costs of remediation. This, says the Association, means simply enough that it was entitled to receive a damages award before ever performing any work on the property. We have already stated our reasons for concluding otherwise.

### (c) Meeting of the minds

The disagreement between the parties on the meaning of the provision regarding an expedited trial leads to the Chens' last argument on the existence and enforceability of a settlement. The Chens, citing *Lindsay v. Lewandowski* (2006) 139 Cal.App.4th 1618, contend that the settlement agreement is unenforceable because there was no meeting of the minds.

In *Lindsay v. Lewandowski*, *supra*, 139 Cal.App.4th 1618, this court held that a stipulated settlement agreement was unenforceable where various parties executed different versions of a settlement agreement, containing different material terms. (*Id.* at pp. 1620, 1623.) We observed that "[a] settlement agreement, like any other contract, is unenforceable if the parties fail to agree on a material term or if a material term is not reasonably certain. [Citations.]" (*Id.* at pp. 1622-1623.)

In the matter before us, the parties did not sign two different versions of a settlement agreement. Rather, they stood in court together and agreed to terms recited on the record. Consequently, they all agreed to one set of terms. The question, then, is whether "a material term is not reasonably certain." (*Lindsay v. Lewandowski*, *supra*, 139 Cal.App.4th at p. 1622.)

The Association does not respond to the Chens' arguments that the settlement agreement is unenforceable due to a lack of meeting of the minds and that the

23

agreement is not reasonably certain. It does, however, state generally that there is substantial evidence to show the judgment properly reflects the terms of the settlement agreement, including the provision permitting the Association to obtain a judgment before performing any work, and that there was no error in entering judgment.

As we have already stated, we disagree with the assertion that substantial evidence supports the provisions of the judgment regarding the Association's (a) obtaining a damages award before any work is done, (b) obtaining postaward bids, and (c) providing a refund if, after completing the work at some undesignated future time, the Association has spent less than the amount of the damages collected from the Chens.

The question is whether the settlement agreement provision regarding an expedited damages trial, as recited on the record, is reasonably certain. "'Whether a contract is certain enough to be enforced is a question of law for the court.' [Citation.]" (*Bowers v. Raymond J. Lucia Companies, Inc.*, *supra*, 206 Cal.App.4th at p. 734.) We hold that the agreement regarding an expedited damages trial is reasonably certain, for reasons already stated. In so holding, we are mindful that the "modern trend disfavors holding contracts unenforceable because of uncertainty and [the] defense of uncertainty applies only when the uncertainty prevents the court from knowing what to enforce." (*Id.* at p. 736.) The Association is entitled to an expedited trial on damages after it has performed remediation work.

*(5) Chens' default—*

The Chens say they had good reason to refuse to sign the draft of the settlement agreement the Association prepared, so the court erred in finding that they were in breach. However, it does not appear from the record that the failure to sign the draft settlement agreement was the reason the court found the Chens to be in breach. Rather, the court found them to be in breach because they had failed to comply with the requirement of the settlement agreement that, within 60 days after the June 24, 2011

24

settlement date, they have an architect prepare a comprehensive remediation plan and submit it for architectural committee review. The reporter's transcript provides substantial evidence in support of this finding.

The Chens also point out what they characterize as "an even stranger reality." That is, when the court entered judgment, it found the Chens were in breach of an injunction that had never been issued. We agree with the Chens that the judgment as worded presents a bit of a conundrum. As read, it does state the Chens were in default of the injunction contained therein—an injunction never before created. However, the court was correct that the parties had reached a settlement agreement on June 24, 2011, that required the Chens to take certain actions within certain timeframes, and that further provided an injunction would issue to compel that performance. As we have already said, substantial evidence supports the court's finding that the Chens had failed to comply with those deadlines. However, while the court could properly find that the Chens had breached the terms of the settlement agreement, as a technical point, is was not proper to find that they had breached an injunction that had never been issued.

*(6) Individual Liability—*

*(a) Background*

In its complaint, the Association named both of the Chens in their individual capacities, as well as Does 1 through 50, as defendants. In his fourth amended cross-complaint, Kang-Shen Chen stated: "Cross-Complainant, KANG SHEN CHEN, is an individual . . . and are [*sic*] the owners of that certain real property . . . commonly known as 6984 East Overlook Terrace, Anaheim, California ('Property')." He further stated: "Cross-Complainant is a member of, and resides in the Anaheim Hills Planned Community, and as a result is subject to the Covenants, Conditions and Restrictions ('CC&Rs') governing the use of the Property."

The Association's memorandum of settlement agreement stated, in part five thereof: "The Answer of Shu Jen Chen, an individual, is stipulated to be the answer of

25

the Shu Jen Chen Trust, of which Mrs. Chen is trustee." At the hearing on the Association's motion, Shu-Jen Chen stated to the court that she was speaking on behalf of the trust, "which [was] listed on part five . . . ." She stated that she was both the trustor and the trustee of the trust. She complained to the court: "The Plaintiff served me [with] a summons on May 30th against the trust of Shu-Jen Chen." Counsel for the Association explained that the Association had filed a Doe amendment to bring in the trust. The court indicated that the effect of the Doe amendment was to add Shu-Jen Chen as the trustee of the trust as a defendant.

Shu-Jen Chen replied: "Okay. And, your Honor, so they already sue me. Then why should they sue me again? . . . And they already sue me as the owner of the property. That's good enough."

The court replied: "Well, as long as it's good enough for you and you're not going to make some claim that they can't enforce this agreement because of the trust, then there's not going to be a problem with that. . . . *But the understanding is that this is the agreement . . . of everybody who's here today, whatever capacity, the human beings that are in court today have the power to enter into this agreement and are agreeing to the terms of this agreement*." (Italics added.) It further stated to Shu-Jen Chen: "They just want to make sure there's not going to be any claim on your side that you don't have to comply with the agreement . . . . You understand that, don't you?" Shu-Jen Chen replied: "But I still own that property." The court checked with her: "And you agree to the terms of this settlement?" She replied: "Sure."

The court then checked to make sure everyone understood and agreed to the terms of the settlement. Kang-Shen Chen expressed his understanding and agreement.

The second amended judgment was entered thereafter against each of the Chens in their individual capacities and against Shu-Jen Chen in her capacity as trustee of the Shu-Jen Chen Trust, jointly and severally.

26

The Chens now argue that the court could not enter judgment or award attorneys fees against either of them in their individual capacities, because the property in question is owned not by them, but by Shu-Jen Chen's trust.[6]  They also argue that the court could not enter judgment against Shu-Jen Chen personally, in any capacity.  They rely on various legal authorities, including Civil Code former section 1354[7] (concerning the enforcement of CC&R's against property owners) and Probate Code section 18001 (concerning the personal liability of a trustee).  As the Association contends, the Chens' argument is waived for failure to raise it in the trial court.  (*Critzer v. Enos*, *supra*, 187 Cal.App.4th at p. 1261.)  Even were this not the case, given the exchange on the record, and the agreement of the Chens that they would be bound in whatever their capacities, their argument is untenable.

### III

### DISPOSITION

The Association's requests for judicial notice and for the making of findings on appeal are denied.  The First Appeal is dismissed.  The second amended judgment is ordered modified to reflect that the Chens were in default of the settlement agreement, as opposed to the injunction, to delete the damages award, and to reflect that

---

[6]  The Association has filed a request for judicial notice of a deed recorded July 10, 2008, showing that Shu-Jen Chen in her individual capacity transferred certain real property to herself as trustee of her trust.  It also requests that this court make a finding, based on that deed, that Shu-Jen Chen is the trustor of the trust.  Both requests are denied.  The Association has not shown that the deed was presented to the trial court. (*County of Orange v. Smith* (2005) 132 Cal.App.4th 1434, 1450.)

[7]  See now Civil Code section 5975.

the Association is entitled to an expedited trial on damages only after it has performed remediation work.  The orders are affirmed.  The Association shall recover its costs on appeal.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


BEDSWORTH, J.

28