Filed 9/14/22  Conservatorship of Stouky CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| Conservatorship of the Estate of HELENE MULA STOUKY. PATRICIA M. BYE, as Conservator, etc., Petitioner and Respondent, v. PAUL S. MULA II, Objector and Appellant. | H047388 (Santa Clara County Super. Ct. No. 1-12-PR-170179) |

Appellant Paul S. Mula II (Paul)[1] challenges an order of the probate court granting a petition for substituted judgment filed by the court-appointed attorney for his aunt, conservatee Helene Mula Stouky (Helene).  The petition requested that, due to the recent death of Paul's father (a beneficiary of Helene's trust and will), the conservator of Helene's estate, respondent Patricia M. Bye, execute an amendment to Helene's trust and a codicil to Helene's will.  The amendment and codicil would ensure that Paul and his father's other children would receive a portion of Helene's assets that otherwise would have gone to Paul's uncle.

---

[1] For clarity, we refer to some of the parties by their first names.

In the probate court, Paul opposed the petition on the ground that it changed Helene's estate plan to omit the allocation to him of a specific property that Helene wanted him to have. In addition, Paul asserted that the petition's proposed allocation of Helene's residence to his half-sister, the conservator of Helene's person, was improper.

Paul's sole contention on appeal is that the probate court abused its discretion in failing to hold an evidentiary hearing before granting the petition. We reject his contention and affirm the probate court's order.

## I. FACTS AND PROCEDURAL BACKGROUND

Helene was born in 1933. She had two brothers, Paul S. Mula (Paul Senior) and Alan Mula, and no children. Appellant Paul is Paul Senior's son. Christina Weiss-Smith is Paul's stepsister and the daughter of Paul Senior's former wife.

In 1997, Helene created a trust. Under the 1997 trust, Paul would receive a property on Arbor Drive if it remained in the trust at Helene's death. Most of her remaining property was to be distributed to her two brothers if they survived her. Her will largely conformed to the provisions of her trust. Some of her property would go to her mother. Christina was not named in the 1997 trust or will. Helene's mother died in 2005.

Helene, who suffers from severe memory impairment, was conserved in 2012. That year, the probate court appointed Robert E. Temmerman as Helene's counsel and Christina as conservator of her person. In 2012, Temmerman petitioned for a substituted judgment changing Helene's estate plan to account for the death of Helene's mother, simplify her estate plan, and conform to Helene's "stated primary desire to treat her two brothers equally." The proposed amendments to the 1997 trust retained the provision that Paul would receive Helene's Arbor Drive property if it remained in the trust at Helene's death. The amendments provided that Christina would receive the trust's two-thirds interest in a property on Juanita Avenue if it remained in the trust at Helene's death.

2

Helene's will was to be simplified to a pour-over will. The court granted the petition. In 2013, the probate court appointed Bye as conservator of Helene's estate.

Paul Senior died in October 2018. In light of this event, in March 2019, Temmerman filed a petition seeking a substituted judgment order that would direct Bye to execute an amendment to Helene's trust and a codicil to Helene's will. Temmerman alleged that the proposed amendment and the proposed codicil were necessary to conform the trust and will to Helene's "stated primary desire to treat her two brothers equally." Under the prior trust provisions, Paul would have received only the Arbor Drive property. Alan would have received the bulk of Helene's estate because Helene's estate plan did not provide for Paul Senior's children to receive his share of Helene's estate in the event of his death.

Under the proposed amended trust and the codicil to the will, Paul and his father's other children would share the portion of the residue of Helene's estate that Paul Senior would have received had he survived Helene. Paul would no longer specifically receive the Arbor Drive property "because he will receive that property as part of his anticipated one-quarter distributive share which is anticipated to be substantially larger than the value of the specific gift."

The amended trust and codicil would also provide for Christina to receive the cash value of the remaining one-third interest in the Juanita Avenue property (so that she could buy out the other owners). Christina would also receive a property on Hamilton Avenue where Helene was residing "in recognition of [Christina's] friendship and understanding, and in recognition of her valuable services" as Helene's conservator.

Paul was notified in March 2019 that the petition would be heard in the probate court on June 19, 2019. On June 19, Paul filed a declaration in opposition to the petition. He indicated he opposed the petition because he had invested over $300,000 in the Arbor Drive property and objected to the proposed allocation of the Juanita Avenue and

3

Hamilton Avenue properties to Christina because she was a "non-blood relative" and "prohibited as a donee."[2]

On July 19, 2019, Paul filed points and authorities in opposition to the petition. He argued the petition was inconsistent with Helene's donative intent, which had always been to have Paul be "one of her principal donees." He argued at length that Christina was a "presumptively disqualified donee." The factual background in his points and authorities was largely concerned with Helene's mother's trust (which was not before the probate court in this proceeding), but it also set forth a detailed family history. He asserted that Christina had not had a significant relationship with Helene before the establishment of the conservatorship.

Paul also contended that Temmerman and Bye had mismanaged Helene's assets and taken actions that contravened Helene's wishes. He argued that removing the specific allocation of the Arbor Drive property to him was inconsistent with Helene's donative intent and with a stipulation entered in an eviction action Bye had brought against him in 2013, which permitted him to retain possession of the Arbor Drive property until the settlement of Helene's estate.

In his points and authorities, Paul requested an evidentiary hearing. He filed a similar supplemental opposition on July 25, 2019, which also requested an evidentiary hearing. Neither of these pleadings identified the evidence that Paul intended to present at an evidentiary hearing. On July 24, 2019, Christina filed a declaration describing at length her long, warm, intimate, and continuing relationship with Helene.

At the July 31, 2019 hearing on the petition, Paul appeared in pro per and told the court that Christina "has attacked us verbally and physically in front of my Aunt Dolly [(Helene)], my family, my four young children. I will be filing a declaration with the Court, and when we have an evidentiary hearing, I will bring those facts about." Paul

---

[2] The probate court apparently conducted a hearing on June 19, 2019, but there is no minute order or other documentation of it in the record on appeal.

asserted that if Helene knew of what was being done she would "get rid of" Christina and Bye, and fire Temmerman. He claimed that Christina "never spent a day of her life with my Aunt Dolly before she was conserved." Paul argued that Christina was "a prohibited, disqualified donee." He asserted that Alan (Helene's surviving brother) "also will come and contest, and he's going to file an objection. He doesn't agree with this either."[3] Paul argued: "I think an evidentiary hearing needs to be set forth in order for this Court to make a ruling on any of the facts."[4] Paul asserted that at an evidentiary hearing he would "be able to bring forth the witnesses and the evidence needed to procure the fact that this is exactly what my Aunt Dolly is requesting."

The trial court asked Temmerman to address the need for "an evidentiary hearing on whether or not Christina Weiss Smith is [] presumptively disqualified for reasons other than the care-giving reason—for the affinity reason." Temmerman told the court that Christina was plainly not disqualified. Temmerman also addressed Paul's allegations against him. Temmerman denied that he was "the creator of this plan," and he noted that "if this were my judgment, I would not have [Paul] receive a dime." Temmerman pointed out that Paul had visited Helene only once since she had been conserved. Temmerman explained that, based on his discussions with Helene when she "had clearer capacity than she does now," he believed that she "would want to benefit both [*sic*] of the children of her deceased brother, Paul [Senior]."

---

[3] Alan had been notified of the petition. There is no indication in the record that he filed any objections to it.

[4] Paul asked the court to rule on his motion for judicial notice, which he had filed the night before the hearing.

The appellate record does not contain Paul's judicial notice motion, the court did not rule on it, and he makes no argument concerning it on appeal. The trial court told Paul that it would not consider his cross-petition due to his failure to follow proper procedures. The cross-petition, which is not in the appellate record, is not at issue in this appeal.

Christina's attorney argued that there was case authority "stand[ing] for the proposition that [a Probate Code section] 2580 petition does not require an evidentiary hearing in all circumstances." Christina's attorney stated the court had "the authority to decide whether there should [] or shouldn't be an evidentiary hearing, and [thought] everything [was] before [the court] already."

The trial court gave Paul the opportunity to respond. He argued: "I feel that the Court must have an evidentiary hearing based upon these facts. I feel that it is your ministerial duty, your Honor, to do so. I have been denied my civil rights since the beginning here."

In making its oral findings and order, the trial court stated it had read all of the papers that had been filed by the parties. It granted the petition for a substituted judgment. The court did not expressly address Paul's request for an evidentiary hearing.

Paul timely filed a notice of appeal from the court's July 31, 2019 order.

## II. DISCUSSION

Paul contends on appeal that the probate court abused its discretion by failing to hold an evidentiary hearing on the petition for substituted judgment before granting the petition.

"The conservator or other interested person may file a petition under this article for an order of the court authorizing or requiring the conservator to take a proposed action for any one or more of the following purposes," which include "[p]roviding gifts for any purposes, and to any charities, relatives . . . , friends, or other objects of bounty, as would be likely beneficiaries of gifts from the conservatee." (Prob. Code, § 2580, subd. (a).[5]) Such actions may include creating, modifying, or revoking a trust, or making a will. (*Id*., subd. (b).)

---

[5] Unspecified statutory references are to the Probate Code.

When such a petition is filed, the court must hold a "hearing" on the petition. (§ 2581.) The court is required to consider "all the relevant circumstances," which "may include" "past donative declarations, practices, and conduct of the conservatee," "traits of the conservatee," "[t]he relationship and intimacy of the prospective donees with the conservatee, their standards of living, and the extent to which they would be natural objects of the conservatee's bounty by any objective test based on such relationship, intimacy, and standards of living," "[t]he wishes of the conservatee," "[a]ny known estate plan of the conservatee (including, but not limited to, the conservatee's will, any trust of which the conservatee is the settlor or beneficiary," "[t]he manner in which the estate would devolve upon the conservatee's death, giving consideration to the age and the mental and physical condition of the conservatee, the prospective devisees or heirs of the conservatee, and the prospective donees," "[t]he value, liquidity, and productiveness of the estate," taxes, "[t]he likelihood from all the circumstances that the conservatee as a reasonably prudent person would take the proposed action if the conservatee had the capacity to do so," and "[w]hether a beneficiary has committed physical abuse, neglect, false imprisonment, or financial abuse against the conservatee after the conservatee was substantially unable to manage his or her financial resources, or resist fraud or undue influence, and the conservatee's disability persisted throughout the time of the hearing on the proposed substituted judgment." (§ 2583.)

"After hearing, the court, in its discretion, may approve, modify and approve, or disapprove the proposed action and may authorize or direct the conservator to transfer or dispose of assets or take other action as provided in the court's order." (§ 2584.) The substituted judgment statutes do not expressly mandate that the required hearing be an evidentiary hearing.

Paul asserts that this court's decision in *Conservatorship of Hart* (1991) 228 Cal.App.3d 1244 (*Hart*) supports his claim that the probate court abused its discretion. *Hart*, like the case before us, involved a contested petition for a substituted judgment.

7

(*Id.* at pp. 1250–1251.)  The probate court did not conduct an evidentiary hearing before granting the petition.  (*Id.* at p. 1256.)

The objector appealed from the probate court's order granting the petition.  (*Hart*, *supra*, 228 Cal.App.3d at p. 1250.)  While the matter was pending on appeal, new evidence came to light establishing that the probate court had been misinformed about the significant tax consequences of previous gifts made by the conservatee.  (*Id.* at pp. 1256–1257.)  This court stated of the new, undisputed evidence:  "what the evidence reveals above all is a serious breakdown in the administration of justice:  Readily obtainable and obviously relevant information concerning enormous previous gifts simply was not produced in the superior court."  (*Id*. at p. 1259.)  This court characterized the new evidence as "significant to the question whether the superior court should have authorized the one-time gifts in the amounts proposed or at all" (*id*. at p. 1260) and, because of the significance of the omitted information, "the decision, and the order which embodies it, are fatally flawed."  (*Id*. at p. 1261.)

This court in *Hart* took note of the "special circumstances" presented by the new, undisputed evidence and decided that the appropriate disposition was to remand the matter for a new hearing.  (*Hart*, *supra*, 228 Cal.App.3d at p. 1262.)  This court added, "We should stress for purposes of remand . . . that adequate regard for the significance of substituted-judgment proceedings and for the rights of all parties including the conservatee requires that the superior court receive and consider relevant and otherwise admissible evidence."  (*Id*. at p. 1264.)

Contrary to Paul's contention, *Hart* does not support a conclusion that the trial court abused its discretion here by failing to conduct an evidentiary hearing before granting the petition.  Paul points to no evidence of the type identified in *Hart* that the trial court should have considered but did not.  The court held a hearing on the petition, which Paul attended and in which he participated.  The transcript of the hearing demonstrates that the court afforded Paul the opportunity to enumerate the factual bases

8

for his arguments against the petition and that the court considered them. *Hart* does not illustrate that the trial court here abused its discretion by failing to conduct a formal evidentiary hearing.

Paul's reliance on *Conservatorship of McElroy* (2002) 104 Cal.App.4th 536 is also misplaced. In *McElroy*, the appellant, relying on *Hart*, claimed that the probate court had abused its discretion in failing to hold an evidentiary hearing before granting a substituted judgment petition. (*Id.* at p. 544.) She argued that the word " 'hearing' " in section 2584 "means a full evidentiary hearing." (*Id.* at p. 553.) The Court of Appeal rejected her contention. It acknowledged that " 'if the petition is contested the petitioner will normally be expected to proceed with evidence sufficient to sustain the applicable burden.' " (*Id.* at p. 554.) The court "disagree[d] with [the appellant's] suggestion that an evidentiary hearing is required in all circumstances. Instead, *Hart* teaches that the trial court must gather the information necessary to allow it to make a rational decision in place of the conservatee. In some cases, this will mean that a full hearing is required. In other cases, circumstances such as a need to reduce tax liabilities may make it obvious that action is required. In other words, the trial court must use its discretion in evaluating the information presented to it in order to decide if the information in the petition is sufficient, or if a full contested evidentiary hearing is required." (*Id.* at p. 554.) As *McElroy* rejected a claim that the probate court had abused its discretion in failing to hold an evidentiary hearing, it does not support Paul's claim that the probate court did abuse its discretion in this case.

As appellant, Paul bears the burden of demonstrating that the probate court's order was an abuse of discretion. " 'The appropriate [appellate] test for abuse of discretion is whether the trial court exceeded the bounds of reason.' " (*Estate of Gilkison* (1998) 65 Cal.App.4th 1443, 1449.) In essence, Paul's claim on appeal is that the probate court was obligated to conduct an evidentiary hearing because he requested one. Although Paul states that an evidentiary hearing was needed so he could present evidence of Helene's

9

intent, her relationship with Christina, Christina's "recent actions" of "abuse and undue influence," the fact that Christina was not a named beneficiary prior to 2012, Helene's relationship with Paul, and "the factors surrounding" the Arbor Drive property, his pleadings below provided no detail about the nature of the evidence he wished to present.[6] His argument at the hearing added no further information.

We reject Paul's claim that he can establish that the probate court abused its discretion simply by showing that he requested an evidentiary hearing. We also disagree that the probate court acted unreasonably in rejecting his request. The trial court gave Paul a number of opportunities at the hearing on the petition to enumerate the legal and factual bases for his objection. Paul made no attempt to introduce any evidence at the July 31, 2019 hearing even though he had been notified of it over four months earlier. The verified petition, the declarations, and the court records from the 2012 substituted judgment proceedings provided a substantial evidentiary basis for the court to determine whether Temmerman had met his burden of establishing that Helene's intent would be served by the proposed substituted judgment. Nothing in Paul's declaration, his pleadings, or his arguments at the hearing justified further delay in the resolution of this matter. On appeal, Paul has not cited new information of the kind this court relied upon in *Hart.* Accordingly, we decide that Paul has not demonstrated that the trial court abused its discretion in declining to conduct an evidentiary hearing before granting the petition.

---

[6] In his appellate reply brief, Paul for the first time asserts that section 1022 *mandated* an evidentiary hearing. Section 1022 provides: "An affidavit or verified petition shall be received as evidence when offered in an uncontested proceeding under this code." (§ 1022.) We decline to address this belated contention. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 [" ' "Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief." ' "].) Furthermore, by failing to object below to the probate court's consideration of the verified petition and declarations at the contested hearing, Paul forfeited this contention. (*Conservatorship of Farrant* (2021) 67 Cal.App.5th 370, 377.)

## III. DISPOSITION

The probate court's order is affirmed. Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(4).)

_____

Danner, J.

WE CONCUR:

_____

Bamattre-Manoukian, Acting P.J.

_____

Wilson, J.

**H047388**
*In re Conservatorship of Helene Mula Stouky*